UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| QUICKVIEW SYSTEMS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:04-CV-1254-B |
| | § | ECF |
| BELO INTERACTIVE, INC., | § | |
| | § | |
| Defendant. | § | |

<u>ORDER ACCEPTING THE MAGISTRATE JUDGE'S FINDINGS AND
RECOMMENDATION ON CLAIM CONSTRUCTION</u>

Before the Court for *de novo* review are the findings and recommendation of the United States Magistrate Judge on claim construction of certain disputed claim terms in this case.[1] On July 18, 2005, upon the parties' submission of their joint claim construction statement, along with briefing and evidentiary support for their respective positions, the Magistrate Judge entered his recommendation with respect to two disputed claim terms – "lines" and "a computer." Plaintiff Quickview Systems, Inc. ("Quickview") filed objections to the Magistrate Judge's recommended construction of both terms to which Defendant Belo Interactive, Inc. ("Belo") has responded. The Magistrate Judge's recommendation on claim construction and objections thereto are now ripe for the Court's *de novo* review. *See ADE Corp. v. KLA-Tencor Corp.*, 288 F. Supp. 2d 590, 592 (D. Del. 2003) (magistrate judge's claim construction subject to plenary review).

---

[1] This case was previously referred to the Magistrate Judge for pretrial management.

## I.  BACKGROUND

This is a patent infringement suit involving U. S. Reissue Patent No. 36,653 (the "'653 Patent") which discloses "a computerized system for displaying information" in which selected portions of different records are displayed with a feature for scrolling through the full text of the records.  (Pl.'s Cl. Br. at 1; '653 Patent Abstract)  Quickview accuses Belo of infringing independent claims 26 and dependent claims 58 and 59 of the '653 patent by "displaying information through its dallasnews.com website."  (*Id.*)  The parties' claim construction dispute involves more than ten claim terms, two of which - "lines" and "a computer" - were addressed by the Magistrate Judge in his recommendation and are the subject of this review.[2]  Before reviewing the recommendation and Quickview's objections, the Court will address the legal authority applicable to this claim construction analysis.

## II.  APPLICABLE AUTHORITY

Claim construction is the first step in the two-part analysis to determine patent infringement.  *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (5th Cir. 1996).  Patent claims that are asserted to be infringed are first construed in order to determine their true meaning and scope.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  Then, the properly construed claims are compared against the device accused of infringing.  *Id.*

Claim construction is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims.  *Embrex, Inc. v. Serv. Eng'g*

---

[2]  The parties agree that these two terms must be construed before the merits of Quickview's infringement claim can be addressed.  The Magistrate Judge reserved construction of the other terms pending summary judgment filings.

*Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000).  The analysis begins with the language of the claim itself.  *Vitronics*, 90 F.3d at 1582.  Absent an express intent to impart a novel meaning, terms in a claim are to be given their ordinary and accustomed meaning.  *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004); *Vitronics*, 90 F.3d at 1582.  However, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history.  *Vitronics*, 90 F.3d at 1582.

Thus, it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning.  *Id.*  Furthermore, the words of the claim must be construed in light of the specification, which contains a written description of the invention that must be clear and complete enough to enable those of ordinary skill in the art to make and use it.  *Id.*  The specification is always highly relevant and the single best guide to the meaning of a disputed term.  *Id.*

The Court may also consider the prosecution history of the patent.  *Id.*  The prosecution history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims.  *Id.*

When construing claims, the Court must look first to the claim language, the specification, and the prosecution history, known collectively as the "intrinsic evidence," because the intrinsic evidence constitutes the public record of the patentee's claim.  *Id.* at 1583.  Competitors are entitled to rely on this record and on the established rules of claim construction to ascertain the scope of the patent and thus, design around the claimed inventions.  *Id.*

Intrinsic evidence alone will resolve any ambiguity in most situations.  *Id.*  Extrinsic evidence,

such as expert testimony regarding the meaning or scope of technical terms, is disfavored. *See id.*
Extrinsic evidence should not be relied upon if the public record unambiguously describes the scope
of the patented invention. *Id.* These principles of claim construction were recently reaffirmed by
the Federal Circuit sitting en banc in *Phillips v. AWH Corporation*, 415 F. 3d 1303, 1311-1324 (Fed.
Cir. 2005) (en banc).

## III.  ANALYSIS

### A.    *"Lines"*

The Magistrate Judge first construed the claim term "lines" as that term is used in Claim 26
of the '653 Patent. Framing the issue in dispute, the Magistrate Judge observed, "[Quickview] insists
that this term, as used in the patent, covers both horizontal and vertical lines...[Belo] maintains that
the term 'lines' should be limited to a 'horizontal line of pixels or characters.'" (F & R at 5)  Next,
relying on the specification and accompanying figures, the Magistrate Judge noted that both the
specification, when read in its entirety, and the attending figures "clearly" distinguish between
horizontal "lines" and vertical "columns." (*Id.* at 6)  Because the specification consistently refers to
the term "line" as "a horizontal line of pixels or characters," the Magistrate Judge deduced, "the term
should be construed accordingly." (*Id.*)

Quickview filed objections to this construction of "lines," maintaining that it improperly
limits the '653 Patent's scope to its preferred embodiments. Upon *de novo* review, this Court finds
no merit in Quickview's objection to the Magistrate Judge's claim construction, instead finding that
his interpretation of the claim language is correct and based upon sound principles of patent law.

The Court does not take issue with Quickview's statement of the settled patent principle that
the written description of a preferred embodiment should not be used to improperly read a limitation

from the preferred embodiment into a claim. But the Court recognizes that it is oftentimes difficult to "draw a line between construing a claim in light of the specification and improperly reading a limitation from a preferred embodiment...into a claim." *The Interpretation of Patent Claims*, 32 AIPLA Q.J. 1, at 35 (Winter 2004) (citing *Bell Atlantic Network Servs., Inc., v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1270 (Fed. Cir. 2001) (other citations omitted)).  As the Federal Circuit stated in *Bell*, "the written description 'can provide guidance as to the meaning of claims, thereby dictating the manner in which the claims are to be construed, *even if the guidance is not provided in explicit definitional format*'....[t]hus, when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'" *Bell*, 262 F.3d at 1271 (emphasis in original) (internal citations omitted).

Here, relying upon the specification which is "the single best guide to the meaning of a disputed term,"[3] the Magistrate Judge found that the consistent use of the term "lines" in conjunction with the term "horizontal" essentially defined the term by implication as "horizontal lines of pixels or characters."  Based on the unambiguous language contained in the specification, explicitly referred to and relied upon by the Magistrate Judge in reaching his construction of the claim language at issue, this Court finds his construction correct and based upon sound principles of claim construction. He correctly looked to the specification which used the term "lines" in a manner consistent only with the qualifier "horizontal." For these reasons, the Court **OVERRULES** Quickview's objections to the Magistrate Judge's recommended claim construction of "lines."

---

[3] *Vitronics*, 90 F. 3d at 1582.

**B.**   *"A Computer"*

The Magistrate Judge next construed the term "a computer" as that term appears in Claim 26 and dependent Claim 58 of the '653 Patent. He noted that, while the parties agree that the term "a computer" includes "a system of interconnected electronic components that receive, process and present data according to instructions," they part company over whether the term covers "networked systems of two or more computers" where "'[t]he components may be co-located or distributed'" (Quickview's position) or only "a *single* computer that does not include networked systems" (Belo's view). (F & R at 6) The Magistrate Judge scanned the intrinsic record including the specification and prosecution history, and found no support for Quickview's interpretation of "a computer" as a networked systems of computers. In discounting Quickview's proposed construction, he remarked, "[n]othing in the plain language of the claims themselves or the prosecution history indicates that the program is intended for multiple or networked computers...[e]very description of the invention either references or contemplates a single computer." (*Id.* at 7) Ultimately, he concluded that the term should be construed in conformity with Belo's position as "a system of interconnected electronic components that receive, process, and present data according to instructions, but not a network system of two or more computers." (*Id.* at 7-8)

Quickview filed objections to the Magistrate Judge's construction of the term "a computer," again arguing that the construction improperly limits the claim element to the preferred embodiment. Quickview further complains that the construction violates the "established" Federal Circuit rule that the article "a" immediately preceding the term "computer" should not limit the claim element "computer" from encompassing two or more like elements. Quickview also takes issue with the Magistrate Judge's determination that "co-located" "does nothing to further elucidate the

meaning of the term 'a computer.'"

Again, upon *de novo* review of the claim construction at issue along with the intrinsic record, the Court finds Quickview's objections without merit. Nowhere in the Magistrate Judge's ruling does he suggest he is limiting the term "a computer" to the preferred embodiment.  Rather, he correctly relies upon the specification and prosecution history to find that there is no support for Quickview's construction of a networked system of computers and further that "[e]very description of the invention either references or contemplates a single computer," in support of Belo's view.  (*Id.* at 7) Quickview's reliance upon "established" patent precedent to support its construction is wholly unavailing in the absence of any support in the intrinsic proof.  The settled patent principles referred to by Quickview do not operate in a vacuum, but rather must be applied in the context of proper claim construction methodology.  This requires the Court to look to the language in the claim, specification and prosecution history which, in this instance, simply do not support its proposed construction.

With respect to Quickview's contention that the article "a" immediately preceding "computer" should have been construed by the Magistrate Judge to refer to "two or more computers" in accord with the "Federal Circuit's established rule," the Court is not persuaded.  In advancing this argument, Quickview overlooks the fact that Federal Circuit precedent on this issue actually holds that "a" may suggest "one" but *can* mean "more than one" *depending on the context in which it is used*. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999) (other citations omitted) (emphasis added).  Quickview has not adequately explained how, when read in the "*context*" of this claim, "a" means "two or more."  In contrast, in the *context* of the specification and prosecution history, the Magistrate Judge found "*a* computer" to refer to a single computer.  For this reason, the

Court is persuaded, after *de novo* review, that Quickview's objection on this point should be overruled.

Finally, Quickview objects to the Magistrate Judge's finding that the term "co-located" does not further elucidate the meaning of the term "a computer." Quickview maintains that the Magistrate Judge should have focused on the entire phrase "the components may be co-located or distributed" in making his determination as to the effect of the term "co-located." Citing to a "long held" Federal Circuit principle that terms describing "spatial locations" are proper and must be read in context, Quickview contends that the Magistrate Judge erred in not adhering to this principle with respect to the term "co-located." The Court disagrees.

Simply because the Magistrate Judge addressed the term "co-located" separately, does not mean that he disregarded the term in the context of the sentence from which it derives. He begins his analysis of the term "a computer" by specifically referring to the fact that Quickview "argues for an expanded definition that encompasses networked systems of two or more computers where '[t]he *components may be co-located or distributed*.'" (F & R at 6 [emphasis added]). Having identified Quickview's definition as including the term "co-located" in the context of the full sentence, he then observes that Quickview's definition is "not supported" by the specification, prosecution history, or preferred embodiment. (*Id*. at 6-7) This suggests that he did examine Quickview's proposed construction, including the full sentence containing the term "co-located," in the context of the intrinsic record and found Quickview's construction unsupported. In any event, stripped to its essence, this is simply another argument by Quickview to support its position that the term "a computer" refers to a network system of two or more computers. The Magistrate Judge properly examined the intrinsic proof and found no support for Quickview's definition. Moreover, other than

contending that the Magistrate Judge disregarded long held patent principles in construing "co-located," Quickview fails to explain how its method of analysis would have yielded a different claim construction of the term "a computer."  For all of the these reasons, the Court **OVERRULES** Quickview's objections on this point and accepts the Magistrate Judge's construction of "a computer."

### IV.  CONCLUSION

For the foregoing reasons, the Court **ACCEPTS** the Magistrate Judge's claim construction of the terms  "lines" and "a computer" and **OVERRULES** Quickview's objections.

**SO ORDERED.**

SIGNED September  _7th_  , 2005


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE